UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LOUISE M. HARRIS, M.D.,

                              Plaintiff,

            vs                                          02-CV-300

FIRST UNUM LIFE INSURANCE COMPANY;
UNUMPROVIDENT CORP.; and UNUM LIFE
INSURANCE COMPANY OF AMERICA,

                              Defendants.

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

JUL 2 0 2005

LAWRENCE K. BAERMAN, Clerk
UTICA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                        OF COUNSEL:

WHITEMAN, OSTERMAN & HANNA          JEAN F. GERBINI, ESQ.
Attorneys for Plaintiff
One Commerce Plaza
Albany, New York  12260

BOND, SCHOENECK & KING, LLP          ARTHUR J. SIEGEL, ESQ.
Attorneys for Defendants
111 Washington Avenue
Albany, New York  12210

DAVID N. HURD
United States District Judge

## MEMORANDUM DECISION and ORDER

## I. INTRODUCTION

Plaintiff Louise Harris, M.D. ("Dr. Harris" or "plaintiff") brought suit against

defendants First Unum Life Insurance Company ("First Unum" or "defendant"),[1]

UnumProvident Corporation, and Unum Life Insurance Company of America, challenging

_____

[1] The parties dispute exactly which corporation may be held liable in this action. Defendants claim that only First Unum may be held liable as it acted as the claim administrator. This is asserted despite the fact that the claim determination was issued on UNUMProvident letterhead. Considering that this decision affirms the denial of benefits and therefore no liability will be imposed on any named defendant, it is not necessary to make a determination on this issue. For ease of discussion, the named defendants will be referred to as one claim administrator, First Unum.

the termination of her long-term disability benefits under a group insurance policy administered and payable by First Unum, in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq.

Motions for summary judgment were previously denied with leave to refile after further consideration of plaintiff's claim on remand. First Unum issued its determination after remand on November 8, 2004. Pursuant to Fed. R. Civ. P. 56., defendant moves again for summary judgment on the administrative record. Plaintiff opposes and cross-moves for summary judgment. Oral argument was heard on January 28, 2005, in Albany, New York. Decision was reserved.

## II. FACTS

In 1998, Dr. Louise Harris was working as a staff anesthesiologist at Glens Falls Hospital in Glen Falls, New York when she developed asthma. By May, her condition had become disabling and she applied for disability benefits under both of her long-term disability policies. The first policy was an individual disability insurance policy, administered and payable by Provident Life Accident & Insurance Company ("Provident Life"), and the other was a group insurance policy, payable by First Unum. The latter policy, the one at issue in this case, guarantees long-term disability benefits upon proof that she, by reason of disability, "cannot perform each of the material duties of [her] regular occupation." (Docket No. 60, Administrative Record at 67.) ("Admin. Rec. at __").

In applying for disability benefits plaintiff stated that she was unable to perform her job duties due to "shortness of breath + wheezing on entering Hospital." Id. at 632-33. In support of her claim, she submitted medical records by Dr. Michael Slaughter ("Dr. Slaughter"), her treating allergist who focused his diagnosis and treatment on plaintiff's

- 2 -

apparent allergy to latex, and diagnosed her condition as "latex induced asthma." Id. at 634.
Her treating pulmonary physician, Dr. Desmond DelGiacco, ("Dr. DelGiacco") stated that she
had a latex allergy, as well as chronic asthma.  He opined that she was totally disabled from
performing the substantial and material tasks required of an anesthesiologist.  Id. at 149.

First Unum accepted plaintiff's and her physicians' representations of her condition
and approved payment of monthly disability benefits, beginning August 3, 1998.  Dr. Harris
was informed that pursuant to her policy, she must periodically provide First Unum with
additional medical information in order for her to qualify for ongoing disability benefits.  Id. at
594-96.  During the handling of plaintiff's claim and the related litigation, plaintiff and/or her
claim file have been evaluated by at least ten doctors.[2]

In August of 1998, Dr. Harris was seen by an independent medical examiner at the
request of Provident Life in relation to the claim on her individual policy.  Dr. James DeMasi
("Dr. DeMasi"), a board certified allergist, did not find indications of a latex allergy or asthma
and opined that she could return to work without restrictions.  Id. at 125.  In late 1998 and
early 1999, Dr. Harris, seeking further medical opinion and treatment, arranged to be
evaluated at both Johns Hopkins Asthma & Allergy Center and the Mayo Clinic.

At Johns Hopkins plaintiff was examined by doctors N. Franklin Adkinson ("Dr.
Adkinson") and Annabel Bolos-Sy who concluded that although plaintiff's clinical history
seemed to suggest a latex allergy, lab testing did not support one, and any asthma she had
was likely due to construction work at the Hospital.  Id. at 391.  Dr. Loren W. Hunt ("Dr.
Hunt"), an allergist at the Mayo Clinic, arrived at essentially the same conclusion.  The Mayo

---

[2] Eight doctors are noted in this opinion, but the record also refers to Dr. George Jolly and Dr. Irwin
Berlin.

Clinic evaluation of Dr. Harris included two methacholine challenge tests ("MCT"), a test to assess airway responsiveness. During the test the patient inhales an aerosol of one or more concentrations of methacholine. Function tests are performed before and after the inhalations to measure the pulmonary response. Dr. Harris's performance on the MCTs was within normal limits. Id. at 382. She also participated in an exercise test which measures capacity in metabolic equivalents. She exercised to a 16-MET workload which demonstrated the ability to engage in vigorous activities. At that time, plaintiff did not inform First Unum, and it was not aware, of either the Johns Hopkins or Mayo Clinic evaluations.

In the meantime, plaintiff's claim with Provident Life was proceeding. Provident Life denied her long-term disability benefits claim in October of 1998 and subsequently denied her administrative appeal. She filed suit against Provident Life in federal court in July of 1999 for breach of contract. During the course of the litigation, Dr. Harris refused to produce the reports and test results generated as a result of her visits to Johns Hopkins and the Mayo Clinic. Provident Life moved before the magistrate judge to compel disclosure. The magistrate judge denied the motion and that decision was appealed. The district judge reversed and compelled disclosure of the medical evaluations to Provident Life. Harris v. Provident Life & Accident Ins. Co., 198 F.R.D. 26, 32 (N.D.N.Y. 2000).

In late1999 and early 2000, the Social Security Administration granted plaintiff personal and family disability benefits. (Admin. Rec. at 697.) This decision was made without the benefit of the Johns Hopkins and Mayo Clinic reports and test results.

Around May 2000, First Unum claims it first began to question whether plaintiff was disabled under the policy. A registered nurse reviewed plaintiff's file and concluded that there was no concrete evidence of a severe latex allergy. The record was forwarded to Dr.

Leonard Sutton, who recommended that plaintiff's file be reviewed by an allergist. The file was thereafter forwarded to Dr. Lawrence Du Buske ("Dr. Du Buske"), an allergist, who reviewed office treatment notes, lab reports, pulmonary function tests, allergy tests, chest x-rays, CT scans, consultative evaluations, correspondence from plaintiff, and her treating physicians, Dr. DeMasi's medical examination, and surveillance footage of plaintiff from August 1998. Id. at 433. He noted that the "gold standard" test for asthma detection came back negative, and that even if she did have asthmatic symptoms, they were likely caused not by a latex allergy, but by sensitivity to aspirin and a restriction of her airways caused by irritants from the construction at the Hospital where she worked. In any event, Dr. Du Buske opined that a latex allergy alone would not render her disabled under the policy, as the policy was only occupation specific (not site-specific) and many hospitals provided for latex-free environments. He claimed her symptoms were subjective only, as reported to her treating physicians, with little to no objective support. Id. at 462.

In reliance on Dr. DuBuske's examination of the record, First Unum terminated plaintiff's benefits by letter dated October 4, 2000. Id. at 422-26. The letter stated: "Although you may have impairments resulting from your self-reported symptomology, your history of aspirin sensitivity, allergy to dust mites, and history of nasal polyposis, it is our determination that the impairments are not severe enough to preclude your ability to return to work in your own occupation as an anesthesiologist. Moreover, the medical records do not conclusively or objectively support your claimed condition of 'latex induced asthma.'" Id. at 425. Dr. Harris had been receiving benefits for approximately twenty-six months.

By letter dated January 4, 2001, plaintiff administratively appealed the revocation of benefits. In support of her appeal, she sent several documents from the pending Provident

Life case, including the complaint, the deposition testimony of Dr. Slaughter and Dr. DelGiacco, and two expert reports.

In considering the administrative appeal First Unum referred plaintiff's file to Dr. Steven Feagin ("Dr Feagin"), who is board certified in internal medicine, for review. In addition to the claim file, Dr. Feagin was provided with the documents plaintiff submitted and the medical records and reports from Johns Hopkins and the Mayo Clinic.[3] Dr. Feagin concluded that plaintiff's claim of disability was mostly self-reported, she had no objectively demonstrable allergy to latex, and no objectively documented severe or frequent asthma attacks that would prevent her from working full-time without restrictions. Id. at 317-28. Though he acknowledged that Dr. Harris suffered from asthma symptoms, he concluded: "While [plaintiff might] possibly miss work with an acute flair, there is nothing to suggest impairment that would prohibit regular full-time work as an anesthesiologist. There is nothing to suggest medication side effects that would prohibit this work." Id. at 319.

Thus, on March 8, 2001, First Unum reaffirmed its denial of benefits, stating that the new information submitted by plaintiff did not change its conclusion that she had no objectively demonstrated allergy to latex or that her condition in any way would prevent her from working without restrictions. Id. at 314.

Meanwhile, partial summary judgment was granted in plaintiff's favor in Dr. Harris's suit against Provident Life. Harris v. Provident Life & Accident Ins. Co., 166 F. Supp.2d 733 (N.D.N.Y. 2001). In denying plaintiff's claim on her individual policy, Provident Life had largely focused on plaintiff's latex allergy, and not on the question of whether plaintiff was

---

[3] Although the Johns Hopkins and Mayo Clinic examinations, tests, and evaluations were performed in 1998-1999, it was not until 2001 that First Unum received copies of the reports and test results. (Admin. Rec. at 325).

disabled from working due to asthma. Indeed, the main focus of the medical testimony had been Dr. Harris's latex allergy and the role it might play in causing her disabling symptoms. Plaintiff sought to shift the focus from a latex allergy to her asthmatic condition, and Provident Life resisted. The summary judgment decision noted that plaintiff was not precluded from arguing disability due to asthma, as opposed to just "latex-induced" asthma, because she had reported symptoms related to asthma, and her treating physician had concluded she had "latex induced asthma," not simply a latex allergy.

Having so concluded, summary judgment was granted in favor of plaintiff on the issue of liability because "defendant failed to present adequate evidence to create a question of fact concerning whether the plaintiff's asthma renders her totally disabled." (Admin. Rec. at 739.) Defendants filed an appeal with the Second Circuit.

In light of this decision, plaintiff again requested reconsideration of First Unum's revocation of her benefits. The file was again referred to Dr. Feagin, who adhered to his previous conclusions. Id. at 120. On November 5, 2001, First Unum informed plaintiff it found "no objectively demonstrated latex allergy or from some other cause, that would prohibit [her] from performing her occupation as an anesthesiologist in a full-time capacity." Id. at 116. On March 1, 2002, plaintiff filed the instant suit, alleging the termination of her long-term disability benefits was improper under ERISA.

In October of 2002, the Second Circuit reversed the district court's finding of liability in the Provident Life action. See Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 84 (2d Cir. 2002) ("genuine issues of material fact exist as to whether Harris is permanently disabled from working as an anesthesiologist"). Thus, in May 2003, while the instant case was still in discovery, a seven-day jury trial was held in plaintiff's case against Provident Life.

- 7 -

The jury rendered a verdict in favor of plaintiff, finding that she was disabled from her occupation as an anesthesiologist due to severe asthma.  Judgment was entered accordingly and was later affirmed on appeal.  Harris v. Provident Life & Accident Ins. Co., 110 Fed. Appx. 185 (2d Cir. 2004).[4]

In February of 2004, First Unum moved for summary judgment based on the administrative record.  Plaintiff subsequently cross-moved for the same, and on June 4, 2004, both motions were denied.  Harris v. First Unum Life Ins. Co., Civ. Act. No. 02-CV-300, 2004 U.S. Dist. LEXIS 10245 (N.D.N.Y. June 4, 2004).  The order remanded the disability claim to First Unum with instructions to reconsider it in light of additional evidence from plaintiff's trial against Provident Life.  First Unum was specifically instructed to consider the testimony of Dr. Slaughter, Dr. DelGiacco, Dr. DeMasi, Dr. Hunt ,and Dr. Adkinson (per videotape). Id. at *25.  Having issued its decisions well before the Providential Life trial, First Unum did not have the benefit of this witness testimony or the related exhibits.  Further, the record did not demonstrate that plaintiff's treating physicians were provided an opportunity to respond to the material upon which First Unum relied in terminating benefits.  The trial testimony would include these responses for First Unum's consideration.  If First Unum denied benefits on remand, it was directed to include "specific reasons for rejecting the opinions and analysis set forth in the additional evidence." Id. at *15.

---

[4] The jury finding of liability against Provident Life is not binding on First Unum as it was not a party in that action.  Further, the record First Unum evaluated on remand consisted of different evidence, including an additional analysis of the claim file by Dr. Broda.  Despite plaintiff's arguments to the contrary, this court is not bound to find Dr. Harris disabled because it refused to set aside the jury verdict in the Provident Life action.  A ruling that sufficient evidence was presented to support the jury's finding is not a ruling which necessarily agrees with the jury.  Different fact-finders may reasonably arrive at different conclusions.  The Second Circuit's ruling that the court did not commit reversible error which would require setting aside the verdict is also not a dispositive endorsement of the jury's findings.  First Unum, and a court conducting a de novo review, are charged to evaluate the record before them and are not required to give deference to previous, unrelated fact-finders.

On remand, First Unum presented the claim file and trial testimony to Dr. Lawrence Broda ("Dr. Broda"), who is board certified in internal medicine. (Docket No. 78, Klein Aff., Ex. B) Since the question before the administrator was not whether Dr. Harris had asthma, but whether it was severe enough to disable her from work, Dr. Broda's analysis focused on what evidence in the record supported the claimed severity of her asthma diagnosis. Dr. Broda concluded that plaintiff's subjective complaints were belied by the results of objective tests, and thus her asthma was not severe enough to disable her from performing her occupation. Id. at 10.

The record includes the results of nine spirometries or air flow volume tests. On each test, plaintiff's results were normal. She also participated in two MCTs, which revealed normal capacity. An exercise test taken in 1999 demonstrated extraordinary capacity. Dr. Broda agreed with plaintiff's experts that these test results are not necessarily inconsistent with a diagnosis of asthma, but opined that taken as a whole, they are inconsistent with a diagnosis of severe or chronic asthma. Id. He concluded that to the extent that plaintiff suffers from asthma, the testing demonstrates that it is, at the least, well-controlled, and thus does not preclude plaintiff from performing her occupation except during periods of acute exacerbation.

Plaintiff declined the opportunity to comment on Dr. Broda's report prior to First Unum's determination. On November 8, 2004, relying on Dr. Broda's analysis, First Unum affirmed the revocation of plaintiff's benefits. (Docket No. 78, Klein Aff., Ex. D.) These motions followed.

## III. **DISCUSSION**

### A. **Summary Judgment Standard**

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505 (1986); Richardson v. New York State Dep't of Correctional Servs., 180 F.3d 426, 436 (2d Cir. 1999). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986).

Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, however, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; Anderson, 477 U.S. at 250. At that point, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec., 475 U.S. at 386. Indeed, to withstand a summary judgment motion, the nonmoving party must demonstrate that sufficient evidence exists upon which a reasonable jury could return a verdict in its favor. Anderson, 477 U.S. at 248-49; Matsushita Elec., 475 U.S. at 587.

### B. **Standard of Review for Denial of Benefits**

ERISA is silent as to the standard of review to be applied to administrators' benefit determinations. Celardo v. GNY Auto. Dealers Health & Welfare Trust, 318 F.3d 142, 145 (2d Cir. 2003). The Supreme Court, however, has held that challenges to denials of benefits are "to be reviewed under a de novo standard unless the benefit plan gives the administrator

- 10 -

or fiduciary authority to determine eligibility for benefits or to construe the terms of the plan."

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948 (1989).  The burden

of proving that such authority or discretion has been granted by the plan is on the

administrator.  Kinstler v. First Reliance Std. Life Ins. Co., 181 F.3d 243, 249 (2d Cir. 1999).

First Unum has not met its burden in this regard and, in fact, appears to concede that de

novo review is appropriate.  Therefore, its decision to revoke plaintiff's long-term disability

benefits will be reviewed de novo.

### C. **Revocation of Benefits**

Having evaluated the quality and credibility of the evidence from the position of the

claims administrator, it is determined that First Unum acted properly by revoking Dr. Harris's

long-term disability benefits.  The decision involves the weighing and balancing of assorted,

conflicting medical information in order to reach a determination as to plaintiff's medical

condition. This case involves balancing at least eight physician opinions and numerous

medical tests.

A survey of case law reviewing disability insurance benefit determinations reveals

courts struggling to evaluate a plaintiff's medical condition by balancing medical evidence in

different combinations .  See Alakozai v. Allstate Ins. Co., Civ. Act. No. 98–3720, 2000 U.S.

Dist. LEXIS 3816, at *2 (S.D.N.Y. March 27, 2000) (listing cases, weighing assorted

physician testimony.)  Thus, citing cases for specific propositions to lay out hard and fast

rules for balancing medical testimony and evidence is difficult at best.

Inevitably, physician testimony must be weighed against other physician testimony.

Whether the physician is a treating, examining, or paper-reviewing, consulting physician

effects the weight of the testimony, but case law provides only general guidelines as to how

- 11 -

to proceed.   While administrators are not required to give deference to the opinions of treating physicians, it is often most logical to do just that absent some discrediting factor. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003); Durr v. Metropolitan Life Ins. Co., 15 F. Supp. 2d 205, 213 (D. Conn. 1998).  At the same time, courts are mindful that treating physicians, by nature of their very role as medical providers, are subject to their own predispositions.  Black & Decker, 538 U.S. at 832;  Maniatty v. UNUMProvident Corp., 218 F. Supp. 2d 500, 504 (S.D.N.Y. 2002) (noting that acceptance of a patient subjective complaints is more or less required of treating physicians, but by no means required of an administrator.)

The testimony of examining physicians, as opposed to those who conduct paper reviews, may also seem to deserve some deference.  See Winter v. Hartford Life & Accident Ins. Co., 309 F. Supp. 2d 409, 415 (E.D.N.Y. 2004).  But it must be considered that examining physicians may provide only snapshot reports of a claimant's health in the course of a chronic condition.   Consulting doctors who conduct paper reviews are regularly bemoaned by plaintiffs complaining of bias.  See Black & Decker, 538 U.S. at 832 (also noting consultant incentive to make a finding of "not disabled").  Still, courts have been clear that such reviews may be dispositive if supported by evidence and an explanation as to why the treating physician's opinion is rejected.  See Barnable v. First Fortis Life Ins. Co., 44 F. Supp. 2d 196, 205 (E.D.N.Y. 1999) (listing examples).  Finally, and obviously, any physician testimony must be evaluated according to medical expertise and the soundness of the reasoning offered.  See e.g. Morgan v. UNUM Life Ins. Co. of America,  346 F.3d 1173, 1178 (8th Cir. 2003) (rejecting expert testimony for lack of expertise in dealing with fibromylagia.)

The conflicting medical testimony must also be considered in relation to any objective evidence in the record.  Weighing the results of medical testing also depends on

numerous factors including, error rates and how the test is viewed as a diagnostic tool within the medical community.  The information on surveillance tapes must always be scrutinized in relation to the medical condition at issue. See e.g. Winter, 309 F. Supp. 2d at 415; Chan v. Hartford Life Ins. Co., Civ. Act. No. 02-2943, 2004 U.S. Dist. LEXIS 17962 (S.D.N.Y. September 8, 2004).[5]

The question before First Unum was not whether Dr. Harris had asthma.  Even Dr. Broda accepted that diagnosis.  Dr. Broda's report noted that Dr. Harris had experienced severe episodes or exacerbations of asthma between March 1998 through April 2000 while she was receiving benefits.  He listed six periods of time during which she required systemic steroids, though Dr. Broda also pointed out that she had not required that treatment for seven months prior to termination of her benefits.

The question was whether plaintiff's asthma was severe enough to preclude plaintiff from performing the material duties of an anesthesiologist.  The burden was on plaintiff to demonstrate the severity of her condition.  Barnable, 44 F. Supp. 2d at 204.  To do this plaintiff relied primarily on the testimony of her treating physicians, Dr. Slaughter and Dr. DelGiacco, who both opined that she had severe and persistent asthma.  She argues that their testimony is sufficient to support her claim and should be dispositive because of their status as her treating physicians.  According to plaintiff, this testimony outweighs the rest of the testimony in the record because her particular condition is one that is best, or most effectively, diagnosed by a treating physician through clinical observations over time.

---

[5] In this case, for example, surveillance tapes were used, at least in part, to show plaintiff when exposed to latex in relation to her allergy claim and became irrelevant as the case proceeded and focused on asthma.

It is apparent from the record that First Unum thoroughly considered the treating physicians' testimony, but simply credited the conflicting evidence in the record. Dr. Broda and Dr. Feagin both addressed the treating physician opinions and generally accepted plaintiff's asthma diagnosis. Though non-examining, paper-reviewing doctors, they relied on the results of objective tests performed primarily by doctors of plaintiff's choosing. They list the nine spirometries, two MCTs, and two exercise evaluations which revealed normal capacity to discount plaintiff's subjective complaints supporting the severity of her condition. Plaintiff argues that these tests represent only snapshots of plaintiff's condition and are therefore not reliable evidence. While it is unclear just how many snapshots are required to present a full picture over time, in this case, these snapshots are sufficient to demonstrate that plaintiff's asthma was not as severe and/or chronic as claimed. At the least, these tests demonstrate well-controlled asthma.

Not only do the objective tests contradict the treating physicians' testimony, but two examining physicians concluded that plaintiff was not disabled by her asthma. Dr. DeMasi, an independent medical examiner and a board certified allergist, did not find indications of a latex allergy or asthma, and opined that she could return to work without restrictions. In July of 1999, Dr. Hunt concluded that " [p]resently [plaintiff's] health appears to be quite good and she seems to be rehabilitating from the . . . diagnosis that have happened in the past . . .There are no recommendations at this time for any medications at this time for any medications such as antihistamines, bronchodilators, or other agents." (Admin. Rec. at 379.)

Thus, the two treating physicians' testimony supporting a diagnosis of severe and chronic asthma was contradicted by two independent medical examiners (Dr. DeMasi and

Dr Hunt) and three reviewing physicians (Dr. Buske, Dr. Feagin, and Dr. Broda), two of whom specifically relied on objective medical testing to discredit plaintiff's subjective reports as to the severity of her condition.

Plaintiff presents several arguments that First Unum improperly weighed the evidence of the record.  She complains that Dr. Broda lacks expertise in comparison with the expertise of her treating physicians.  Dr. Broda has been board certified in internal medicine since 1977, and thereafter was involved in patient care in one capacity or another which involved treating pulmonary conditions including asthma.  (Docket No. 85, Broda Aff.)  He is qualified to opine as to plaintiff's condition.

Plaintiff also complains that Dr. Broda's testimony should not be credited because he was not an examining physician.  This argument is undermined by plaintiff's repeated reminders that single examinations in the course of chronic conditions represent only snapshot views.  Furthermore, Dr. DeMasi and Dr. Hunt were examining physicians and did not find plaintiffs's asthma to be severe and/or chronic as she claimed.

Plaintiff points out that she is not required to demonstrate her disability by any particular evidence and complains that First Unum placed an inappropriate emphasis on objective evidence.  See Connors v. Conn. Gen. Life Ins. Co., 272 F.3d 127, 137 (2d Cir. 2001) (district court reversed because it found that complaints of pain alone could not be considered legally insufficient evidence of disability.)  Plaintiff misconstrues First Unum's emphasis.  It is not that plaintiff is necessarily required to present objective evidence, but rather, in this case, that the objective evidence in the record contradicts her self-reported subjective complaints.  That evidence was reasonably interpreted as demonstrating that plaintiff's asthma is not as severe as claimed.

First Unum properly weighed the evidence in reaching its determination to revoke plaintiff's long-term disability benefits. Plaintiffs arguments to the contrary are unavailing. The decision of the administrator will be upheld.

## IV. CONCLUSION

Dr. Harris did not meet her burden of demonstrating that she was not able to perform the material duties of her occupation. Both parties, and their experts, seem to concede that plaintiff has asthma, regardless of whether it is triggered by a latex allergy or proximity to construction work. But plaintiff did not demonstrate that her asthma was as severe as she claimed. First Unum's finding that it was not as severe as claimed was the result of a proper balancing of the medical testimony in the record. The denial of plaintiff's long-term disability benefits claim will be affirmed.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED;

2. Plaintiff's cross-motion for summary judgment is DENIED; and

3. The complaint is DISMISSED.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

United States District Judge

Dated:  July 20, 2005
        Utica, New York.

- 16 -